16 U.S. 7 (____)
3 Wheat. 7
THE FRIENDSCHAFT: WINN et al., Claimants.
Supreme Court of United States.

*9 Wheaton, for the appellants and captors.
Gaston, for the respondents and claimants.
*21 February 6th, 1818. MARSHALL, Ch. J., delivered the opinion of the court, and after stating the facts, proceeded as follows:
The appellants contend: 1st. That the sentence pronounced by the district court, in August 1814, which was affirmed by the circuit court, in May 1815, condemned finally the packages for which a decree of restitution was afterwards made, and that the subsequent proceedings were irregular, and in a case not before the court. 2d. That upon the merits, further proof ought not to have been ordered, and a condemnation ought to have taken place.
On the first point, it is contended, that these goods, having been comprehended in invoices not indorsed, nor accompanied with letters of advice, are within the very terms of the sentence of condemnation, and must, consequently, be considered as condemned. The principle on which this argument was overruled in the court below, is to be found in its sentence. The district court, in its decree of 1814, did not intend to confine its description of the property condemned, to the general terms used in that decree, but did intend to enumerate the particular bills to *which those terms should [*46 apply. This is conclusively proved by reference to the subsequent intended enumeration, which is followed by a blank, obviously left for that enumeration. Had the enumeration been inserted, as was intended, the particular specification would undoubtedly have controlled the general description which refers to it. The unintentional and accidental omission to fill this blank, leaves the decree imperfect, in a very essential point; and if the case, and the whole context of the decree, can satisfactorily supply this defect, it ought to be supplied. This court is of opinion, that no doubt can be entertained respecting the bills with which the district court intended to fill up the blank. The condemnation of shipments, evidenced by bills of lading, with blank indorsements, or without indorsement, could apply to those only which required indorsement, or which were in a situation to admit of it. These were the bills which were made, deliverable to shipper, or to the order of the shipper. Bills addressed to a merchant, residing in Lisbon, could not be indorsed by such merchant, until the vessel carrying them should arrive at Lisbon. Consequently, such bills could not be in the view of the judge, when condemning goods, because the bills of lading were not indorsed; and had he completed his decree, such bills could not have been inserted in it. No conceivable reason exists, for admitting to further proof, *22 the case of a shipment, evidenced by a bill of lading, made deliverable to shipper, or order, and indorsed to a merchant, residing in Lisbon; and at the same time, condemning, without admitting to further proof, the same *47] *shipment, if evidenced by a bill of lading, made deliverable, in the first instance, to the Lisbon merchant. No. 108, for example, is made deliverable at Lisbon, to Signor Jose Ramos de Fonseco, and is consequently not indorsed. It is contended, that these goods are condemned; but had the bill been made deliverable to shipper, or order, and indorsed to Signor Jose Ramos de Fonseco, further proof would have been admitted. Nothing but absolute necessity could sustain a construction, so obviously absurd. This court is unanimously of opinion, that justice ought not to be diverted from its plain course, by circumstances so susceptible of explanation, that error is impossible; and that when the decree was returned to the district court of North Carolina, with the blank unfilled, that court did right in considering the specification intended to have been inserted, and for which the blank was left, as a substantive and essential part of the decree, still capable of being supplied, and in acting upon, and explaining the decree, as if that specification had been originally inserted. This impediment being removed, the cause will be considered on its merits.
It is contended, with great earnestness, that further proof ought not to have been ordered, and that the goods which have been restored, ought to have been condemned as prize of war. In support of this proposition, the captors, by their counsel, insist, that the rights of belligerents would be sacrificed, should a mere bill of lading, consigning the goods to a neutral, *48] *unaccompanied by letter of advice or invoice, let in the neutral claimant to further proof. It is not pretended, that such a bill would, of itself, justify an order for restitution; but it certainly gives the person to whom it is addressed, a right to receive the goods, and lays the foundation for proof, that the property is in him. It cannot be believed, that admitting further proof, in the absence of an invoice or letter of advice, endangers the fair rights of belligerents; these papers are so easily prepared, that no fraudulent case would be without them. It is not to be credited, that a shipper in London, consigning his own goods to a merchant in Lisbon, with the intention of passing them on a belligerent cruiser as neutral, would omit to furnish a letter of advice and invoice, adapted to the occasion. There might be double papers, but it is not to be imagined, that papers so easily framed, would not be prepared, in a case of intended deception.
It is, unquestionably, extraordinary, that the same vessel which carries the goods should not also carry invoices, and letters of advice. But the inference which the counsel for the captors, would draw from this fact, does not seem to be warranted by it. It might induce a suspicion, that papers had been thrown overboard; but in the total absence of evidence, that this fact had occurred, the court would not be justified in coming positively to such a conclusion. Between London and Lisbon, where the voyage is short and the packets regular, the bills of lading and invoices might be sent by the regular conveyances. But were it even admitted, that a belligerent *49] master, carrying a *cargo, chiefly belligerent, had thrown papers overboard, this fact ought not to preclude a neutral claimant, to whom no fraud is imputable, from exhibiting proof of property. In the case before the court, no attempt was made to disguise any part of the cargo. By far *23 the greater portion of it was confessedly British, and was condemned, without a claim. The whole transaction, with respect to the cargo, is plain and open; and was, in the opinion of this court, a clear case for further proof.
The further proof in the claims 108, 109, 141 and 122, consists of affidavits to the proprietary interest of the claimants; of copies of letters, in some instances ordering the goods, and in others, advising of their shipment; and of copies of invoices  all properly authenticated. This proof was satisfactory, and the order for restitution made upon it was the necessary consequence of its admission.[(a)]
*In the claim to No. 118, made for Joseph Winn, the further proof [*50 was not so conclusive. It consisted of the affidavit of the claimant to his proprietary interest, and to his character as a domiciled Portuguese subject, residing and carrying on trade in Lisbon. The affidavit was made in London, on the 29th day of June 1815, but states the claimant to have been at his fixed place of residence in Lisbon, at the time of the capture, where he had resided for several years preceding that event, and where he continued until the 12th of June 1814, when he left *Lisbon for Bordeaux, [*51 and has since arrived in London on mercantile business. That he is still a domiciled subject of Portugal, intending to return to Lisbon, where his commercial establishment is maintained, and his business carried on by his clerks, until his return. To a copy of this affidavit is annexed that of Duncan McAndrew, his clerk, made in Lisbon, who verifies all the facts stated in it.
This property was also restored by the sentence of the district court, and *24 affirmed in the circuit court. On an appeal being prayed, the circuit court made an order, allowing this claimant to take further proof to be offered to this court. The proof offered under this order consists of a special affidavit of one of the shippers, of sworn copies of letters ordering the shipment, and of the invoice of the articles shipped. This claim, not having been attended, when the sentence of restitution was made, with any suspicious circumstances, other than the absence of papers which have since been supplied, and which was probably the result solely of inadvertence, this court is of opinion, that the further proof now offered, ought to be received. It certainly dissipates every doubt respecting the proprietary interest. The only question made upon it, respects the neutral character of the claimant.
It has been urged, that the native character easily reverts, and that by returning to his native country, the claimant has become a redintegrated *52] British subject. *But his commercial establishment in Lisbon still remains; his mercantile affairs are conducted in his absence, by his clerks; he was himself in Lisbon, at the time of the capture; he has come to London, merely on mercantile business, and intends returning to Lisbon. Under these circumstances, his Portuguese domicil still continues.
But it is contended, that the connection between Britain and Portugal retains the British character, and the counsel for the captors has enumerated the privileges of Englishmen in that country. These privileges are certainly very great; but without giving them a minute and separate examination, it may be said, generally, that they do not confound the British and Portuguese character. They do not identify the two nations with each other, or affect those principles on which, in other cases, a merchant acquires the character of the nation in which he resides and carries on his trade. If a British merchant, residing in Portugal, retains his British character, when Britain is at war, and Portugal at peace, he would also retain that character, when Portugal is at war, and Britain at peace. This no belligerent could tolerate; its effect would be to neutralize the whole commerce of Portugal, and give it perfect security.
Sentence affirmed.[1]
NOTES
[(a)] M. Bonnemant, in his commentary upon De Habreu, makes the following remarks: "Parmi les pièces dont un navire doit être pourvu pour la régularité de sa navigation, il en est de deux sortes; les unes servent à prouver la neutralité du navaire, les autres celle de la cargaison. Celles relatives à la cargaison sont les connoissments, les polices de chargement, les factures. Toutes ces pièces font pleine et entière foi, si elles sont en bonne et due forme. Toute ne sont pas d'absolue nécessité comme elles sont correlatives, elles se suppléent entre elle et peuvent être supplées par d'autres équivalentes. Mais si l'on en découvre d'autres qui les démentent, s'il se recontre des double expéditions on autres documens capable d'ebranler la confiance, la prèsomption de fraude se change dès-lors en certitude, on ne présume pas simplement le navaire ennemi, on le suppose. La preuvre de la neutralité est toujours á la charge du capture. Cette preuve ne peut et ne doit résulter que des paers trouvés á bord;[1] toute autre indirecte ne peut être reque ni pour ni contre, c'est la disposition de l'art. 11. du règlement du 26 Juillet, 1778, et des précédens qui veulent qu'on n'ait égard qu'aux pièces trouvées à bord, et non à celles qui pourroient être produites après la prise. C'est au capteur à prouver ensuite l'irregularité des pièces, à les discuter de la manière qu'il juge convenable pour en demontrer la fraude et la simulation. Quant aux irregularités que pouvent contenir certaine pièces de bord, ce n'est pas á des omissions de forme usitées que les tribunaux doivent s'attacher, c'est par l'ensemble des pièces, et sur tout par la vérité des choses qui en résulte, qu'ils doivent se déterminer; l'expérience n'a que les trop démontré que la plus grande régularité dans les papiers mas quoit souvent la fraude et la simulation, nimia precautio dolus." Bonnemant's Translation of De Habreu, tom. 1, p. 28.

[1 The French prize practice not allowing further proof, but acquitting or condemning upon the original evidence, consisting of the papers found on board, and the depositions of the captors and captured. The only exception to this rule is, where the papers have been spoliated by the captors, or lost by shipwreck, and other inevitable accidents. Valin, Traité des Prises, ch. 15, n. 7. But the Spanish law admits of further proof, in case of doubts arising upon the original evidence. De Habreu, part 2, ch. 15.]
[1] For a further decision, on Moreira's claim, see 4 Wheat. 105.